# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

------------------------------------

| | | |
|---|---|---|
| DON HIGH, | § | CIVIL ACTION NO. |
| | § | |
| | § | |
| Plaintiff, | § | _____ |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| CITY OF WYLIE, TEXAS, ABERNATHY, | § | |
| ROEDER, BOYD & HULLETT, A | § | |
| PROFESSIONAL CORPORATION, RICHARD | § | |
| M. ABERNATHY, LISA DAVIS, AND MINDY | § | |
| MANSON | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

___

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

___

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Don High, hereinafter called "Plaintiff" or "High," by and through the undersigned attorney, complaining of and about the City of Wylie (the "City"), Abernathy, Roeder, Boyd & Hullett ("ARBH"), Richard M. Abernathy ("Abernathy"), Lisa Davis ("Davis"), and Mindy Manson ("Manson") hereinafter collectively referred to as the "Defendants", and for causes of action shows unto the Court the following:

## PRELIMINARY STATEMENT

1.      The Plaintiff, Don High, brings this action against the Defendants[1], for violations of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e), 42 U.S.C. § 1983, and Declaratory Judgment.

2.      At the time of discrimination and retaliation, High was employed with the City[2] as a Municipal Court Prosecutor. Despite High's many achievements and long-term service with the City and ARBH, he was subjected to discrimination because of his race and age. Defendants later subjected High to retaliation after having knowledge that he participated in protected activity by filing a complaint against Davis, Bantz and Manson[3]. High filed three complaints between February 7, 2018 and March 13, 2018 and the City failed to address his concerns. The Defendants were aware of High's previously filed complaints[4]. The City Council revoked High's resolution appointing him as city prosecutor after the filing of his complaint. The City's rationale is that they were working to further investigate the functions, terms of service and duties, and compensation of High's position.

---

[1] The specific causes of action (s) directed towards each individual defendant is separately discussed later in this complaint. See *infra*.

[2] On information and belief, ARBH was a joint employer of Mr. High at the time the violations asserted in this complaint occurred. Accordingly, Plaintiff is seeking a declaratory judgment on that issue.

[3] Mr. High's initial complaint was asserted against Davis only, but later amended to include Manson and Bantz due to following actions that occurred.

[4] Defendant's knowledge of these complaints is described more fully, infra.

## JURISDICTION

3.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that it is a civil action arising under Title VII.  This action further arises under the U.S. Constitution, laws, or treaties of the United States.

## VENUE

4.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the asserted claims occurred.  Further, the exercise of personal jurisdiction comports with Due Process under the United States Constitution.

## CONDITIONS PRECEDENT

5.     On February 7, 2018, High filed a complaint against Lisa Davis.  Mr. High's complaint was personally delivered to the City's Human Resources department ("HR Department").  The complaint was also emailed to the HR Department.

6.     On February 26, 2018, Mr. High filed an additional complaint after the City's *refusal* to consider, review, and investigate his complaint in accordance with their policies.  Mr. High personally delivered a copy of this complaint to the HR Department with a copy sent by certified mail return receipt requested ("CMRRR").

7.     On March 13, 2018, Mr. High filed his third complaint, supplementing the previously filed complaints.  Mr. High personally delivered a copy of this complaint to the HR Department with a copy sent by CMRRR.

8.      On April 12, 2018, Mr. High filed a Charge with the U.S. Equal Employment Opportunity Commission (the "Commission") on the basis of race, age, retaliation and hostile work environment.  The Commission issued Mr. High a right to sue letter affording him up to 90 days to file suit in U.S. District Court against the Respondent.

9.      The City engaged the firm of Adams, Lynch and Loftin to conduct a *purported* independent investigation into Mr. High's complaints.  As of May 14, 2018[5], the firm has yet to interview one person related to Mr. High's complaint in furtherance of the City's intent not to take Mr. High's complaints seriously.

10.     Mr. High has complied with all conditions precedent to raising the claim(s) set forth in this matter.

11.     High adequately exhausted his administrative remedies prior to filing this lawsuit.

12.     High has mitigated his damages to at least the extent required by law.

## PARTIES & SERVICE

13.     **Plaintiff Don High** is an individual who resides in Plano, Collin County, Texas. Plaintiff is a citizen of Texas.  Plaintiff may be contacted by his undersigned attorney.  High is an employee, as defined by Title VII.

14.     **Defendant City of Wylie** is a municipal corporation and political subdivision of the State of Texas.  In accordance with the City' Charter, the City may be served by serving its

---

[5] More than 3 months have elapsed since the City was on notice regarding Mr. High's complaints.

**Mayor Eric Hogue** or **Mayor Pro Tem, Keith Stephens** at **300 Country Club Road, Building 100, Wylie, Texas 75098**.

15.     **Defendant Abernathy, Roeder, Boyd & Hullett**, is a Professional Corporation with a principal place of business located at 1700 N. Redbud Blvd., Ste. 300, McKinney, Texas 75069.  **Defendant Abernathy, Roeder, Boyd & Hullett may be served by serving Robert H. Roeder, its Registered Agent authorized to accept service at 1700 Redbud Blvd., Suite 300, McKinney, Texas 75069**.

16.     **Defendant Richard M. Abernathy** is an individual who is employed in Collin County at **Abernathy, Roeder, Boyd & Hullett**. Defendant Abernathy may be served at his place of employment at **1700 Redbud Blvd., Suite 300, McKinney, Texas 75069**.

17.     **Defendant Lisa Davis** is an individual who is employed in Collin County at the City of Wylie as Court Administrator.  Defendant Davis may be served at her place of employment at **City of Wylie Municipal Complex, 300 Country Club Road, Wylie, Texas 75098.**

18.     **Defendant Mindy Manson** is an individual who is employed in Collin County at the City of Wylie as City Manager.  Defendant Manson may be served at her place of employment at **City of Wylie Municipal Complex, 300 Country Club Road, Building 100, First Floor, Wylie, Texas 75098.**

19.     Abernathy[6] held a telephone conference with Mr. High on or about April 10, 1995 to inquire whether Mr. High would handle the prosecution duties for the City of Wylie. Abernathy followed up with a formal letter[7] to Mr. High confirming his appointment as prosecutor for the City of Wylie.  Although not specifically stated in Abernathy's letter, he intended for Mr. High to continue to act as the prosecutor for the City of Wylie for an extended period of time.  Abernathy attached a listing of the Pre-Trial and Trial dates to his letter to Mr. High. Since then, Mr. High has continued to serve as the Prosecutor of the City of Wylie for the past 23 years.

20.     On information and belief, Abernathy held his telephone conference with Mr. High and sent his formal letter without the knowledge and approval of the City Council of Wylie.

21.     On information and belief, the City Charter ("Charter") for the City of Wylie in effect on April 10, 1995 is the same Charter for the City that was in effect in for the 2017 – 2018 fiscal year.

22.     Since his hiring by Abernathy and/or ARBH, Mr. High has had minimal communications with Abernathy or representatives of his firm, yet Mr. High was permitted to continue to serve as Prosecutor for the City of Wylie.  Mr. High has been permitted and authorized to maintain his private practice of law while employed with the City.

---

[6] Mr. Abernathy and/or ARBH have served as the City of Attorney for the City of Wylie Texas since 1995 and possibly before that time.

[7] **See, Exhibit A**, Letter from Richard Abernathy hiring Mr. High to prosecute cases for the City of Wylie.

23.     Mr. High received his first check from ARBH[8], then the following paychecks were issued by the City of Wylie.  For many years, the City misclassified Mr. High as an independent contractor, failed to withhold applicable taxes and issued annual 1099s.  The City did not consider Mr. High to be an employee of the City and denied him the ability to participate in any employee benefit programs that other City employees would otherwise be eligible to participate in.  As of the filing of this lawsuit, Mr. High continues to be denied of the ability to participate in such employee benefits programs.

24.     The City continued to misclassify Mr. High as an independent contractor until the U.S. Department of Treasury - Internal Revenue Service ("IRS") conducted an investigation or examination of the City in 2007 for prior tax years.  According to the Form 4668 dated June 18, 2007, the examination was discussed with Melissa Beard (Senior Accountant).  The City was assessed a $19,200.64 tax penalty for the 2004 calendar year.  Notably, the City "agreed" to the IRS findings from its examination.  The City's finance director consented to the immediate assessment and collection of any additional tax and penalties as of July 5, 2007.

25.     Attached to the IRS findings for the 2004 year was a document that identified Mr. High was one of the "employees" who was affected by the City's violations in the amount of $18,699.00.  It is not clear from the attachment whether this was the amount the City previously paid to Mr. High as income for that particular tax year or if the figure represents something else.

26.     The Summary of Employment Tax Examination stated: "The examination of your employment tax returns as reflected on this Agreement included an examination for employment

---

[8] In 1995, ARBH went by the name of Abernathy, Roeder, Robertson & Joplin.  On information and belief, the current name is Abernathy Roeder, Boyd & Hullett.

tax purposes of whether elected officials, judges, prosecutors… should be treated as employees of the taxpayer…..Based on this examination, you may not rely on the audit of any classes of workers for purposes of the prior audit safe haven for satisfying reasonable basis requirement of Section 530, because ***all workers audited were reclassified as employees[9].***"

27.     Effective the pay period ending June 29, 2007, the City began withholding applicable FICA, Federal and other taxes from Mr. High's paycheck.  Initially, Mr. High was under the impression that he was an independent contractor, so he submitted an IRS Form SS-8 to the IRS for determination of Worker Status concerning his work relationship with the City of Wylie for the years of 2007, 2008, 2009[10].

28.     Mr. High received letters dated October 6, 2009[11] and October 19, 2010[12] from the IRS, where it was confirmed that the IRS ***"determined that prosecutors for the City of Wylie, specifically naming Don N. High, are employees for federal tax purposes."***

29.     As additional background facts, when Mr. High first started working with the City in April 1995, the court personnel comprised of one clerk, one part-time judge, and no bailiff. Just prior to February 7, 2018, the court was comprised of three (3) clerks, a court supervisor, a juvenile case coordinator, two bailiffs, two part-time judges and Mr. High as the only prosecutor (part-time).

---

[9] Mr. High was one of the employees audited in this IRS examination.  Accordingly, the IRS mandated that the City reclassify him as an employee.

[10] Mr. High's work for the City did not substantially change until February 2017 due to an incident with Lisa Davis. See, *infra*.

[11] **See, Exhibit B** – Letter from IRS requesting additional information.

[12] **See, Exhibit C** – IRS letter confirming Mr. High's status as an employee of the City of Wylie.

30.     During the course of Mr. High's employment with the City there were instances where he had to miss work (i.e. illness, vacation, etc.). On those occasions, Mr. High located another attorney to handle his prosecutorial duties in his absence. This was a common practice during his 23 years of service without any intervention or guidance from the City, Abernathy or ARBH.[14]

31.     In 1995, Mr. High spent between six to nine hours a month providing prosecutorial services to the City. In 2016, those hours increased to 41 hours per month. In early 2017, Mr. High's hours began at the same pace as the 2016 year, but it changed in May 2017. His hours were reduced to 25.59 per month, as a result of an incident involving Lisa Davis, the Court Administrator.

32.     In February 2017, a juvenile truancy case was heard in the City's court that involved a dire situation of the well-being of the young person involved. After the matter was appropriately handled, Davis called Mr. High into her office to admonish and reprimand him about the juvenile's situation and that he needed to listen to the juvenile case coordinator. Davis requested that Preston Skinner leave the room and close the door behind him. Davis permitted Katonya Johnson[15] to remain in the office. Davis stated, "Don you must listen to her." Johnson stated, "that little girl in there was punking you and jerking your chain … she was lying to you." After listening to both, Davis and Johnson, repeatedly reprimanded him---Mr. High refrained from making any comments and asked, "are you done now?" The meeting abruptly ended.

---

[14] No intervention occurred until Mr. High filed his complaint against Lisa Davis as further discussed.

[15] Ms. Johnson is the juvenile case coordinator.

33.     Mr. High brought this matter to the attention of Linda Bantz, the Director of Finance for the City. Bantz arranged a meeting with Davis, High and Judge Maldonado to further discuss the incident.  During the meeting, Mr. High restated what occurred with Davis and Johnson and sought further clarification in his role as City Prosecutor.

34.     Bantz confirmed that Davis is not Mr. High's supervisor.  Mr. High inquired with Bantz and Judge Maldonado, "who is my supervisor?" Both Bantz and Judge Maldonado were stumped, and all parties concluded that Mr. High did not have a supervisor and he served at the pleasure of the City Council due to his resolution[16].  The meeting concluded.

35.     The next day Davis and Johnson ceased talking to Mr. High.  Instead, all communications were directed to Mr. High in the form of a sticky (post-it) note or email.  Since February 2017, this is how Davis and Johnson have communicated with High.  This made Mr. High extremely uncomfortable and the work environment very tense.

36.     On March 14, 2017, the City Council issued Resolution No. 2017-07(R) for Mr. High for a one year period commencing on April 1, 2017 through March 31, 2018[17].

37.     On March 16, 2017, Davis emailed Mr. High asking him about his job duties and time requirements as a prosecutor.  Although uncomfortable with doing so, Mr. High complied with Davis's email and provided the requested information. Prior to this email, there were

---

[16] Mr. High did not have a resolution when he began employment with the City of Wylie.  On information and belief, his first resolution was issued April 10, 2007 via Resolution 2007-15(R) establishing a two-year term.  The resolution was signed by Mayor John Mondy. Mr. High would receive a new resolution every two years. Each new resolution would renew his term of service for an additional two years, until the March 2017 resolution was presented.  Interestingly, on the City's March 14, 2017 agenda, Lisa Davis presented this resolution to the City Council for their action.  This occurred the next month after the incident between Davis and High that led to the start of the hostile work environment.

[17] Usually, a resolution covering a two-year period is issued for Mr. High, with the exception of this year.

discussions with Bantz about creating an additional prosecutor position to assist Mr. High. It was discussed that Tyler Edmundson would be an appropriate candidate for the potential additional prosecutor position. Mr. Edmundson had worked with Mr. High for over a year learning the prosecutor role.

38.     After several months, Mr. High followed up with Bantz about the additional prosecutor position and she confirmed that she has not heard anything about the position, as nothing had been decided yet. Mr. High informed her of his concerns about the tense working environment in the court related to the actions of Davis and Johnson. Now other members of the staff were acting similarly to that of Davis and Johnson. Bantz stated, *“well, actually I told them to act that way.”*

39.     On June 6, 2017, Davis emailed Mr. High refusing to provide copies of relevant information from case files so he could appropriately complete his job tasks. Although Davis is not an attorney, she said it was too costly, too time consuming and not necessary to provide Mr. High with the information he requested. Mr. High further clarified to Davis that he needed enough information on the cases, so he could make a recommendation on the cases prior to appearing in court. To the contrary, Davis suggested that he make recommendations while meeting with the defense counsel on these cases. Soon thereafter, Mr. High's time at work has been reduced due to docket cancellations by Davis. Ms. Davis has succeeded in removing Mr. High from all attorney dockets.

40.     On June 22, 2017, Davis emailed Mr. High to cancel all August 10th dockets;

41.     On July 11, 2017, Davis emailed Mr. High that there will be no Wednesday dockets in July 2017.

42.     On July 31, 2017, Davis furthered informed Mr. High that there will be no morning dockets on Wednesday, August 2nd--instead dockets would begin at 1:30pm.

43.     On August 2, 2017, Davis emailed Mr. High that the only docket for him that week would be August 9th.

44.     On August 30, 2017, Mr. High notified Preston Skinner that he was ill and would have Tyler Edmundson to cover his docket the afternoon of August 31, 2017. Bantz requested that Davis inquire with Mr. High about how Tyler is compensated for the time he spends covering Mr. High's docket(s). Mr. High addressed this matter and confirmed that Tyler bills for his time and Mr. High compensates him at the same rate of pay that Mr. High would have received. Davis then arbitrarily notified Edmundson and Mr. High that the cases for August 31, 2017 have been reset and Edmundson no longer needed to appear in court.

45.     After inquiry, Davis informed Mr. High that Mindy Manson determined that the appointment of any additional attorneys to act as the prosecutor should be done by the City Attorney with approval from the City Council. This is contrary to the longstanding practice that was in place since April of 1995.

46.     On September 11, 2017, Davis notified High by email that his 9:00 am docket for that Wednesday was cancelled.

47.     At some point, Mr. High had a discussion with Sgt. Coomer of the City's Police Department about his experiences with Davis. High had previous discussions with the court's former bailiff, Shea Pickrill about his experiences with Davis. All three agreed---one should never cross her. The municipal court is not the place it used to be because of Davis.

48.     Mr. High scheduled a meeting with Manson on November 15, 2017, but due to unforeseen circumstances he could not meet with her in person, but they spoke on the phone. Mr. High apprised Manson about what had been going on with the court, Davis, Johnson, Bantz and their actions towards him.  Manson informed Mr. High, *"you've given me quite a lot… I have some looking into to do on this matter."*  Manson stated that she would get back to Mr. High, but she never did.

49.     On November 28, 2017, Bantz informed Mr. High that the City was going to have another attorney from ARBH to handle some additional hours of prosecution needed in the court[18].  Mr. High was not consulted on the City's decision to reduce his hours and give additional hours to ARBH and one or more of their attorneys.

50.     On February 7, 2018, Mr. High was late to court due to car trouble.  He was in constant communication with the Court about his status.  Mr. High exchanged text messages with Ron Spears, Court bailiff at 9:09am.  Spears inquired if High needed a ride. High informed him that he was working to get the vehicle started, but he should be in court by 10:00am.  At 9:40 a.m High called Davis on her office phone, but she did not pick up.  He left a voicemail about what happened and informed her that he was on his way and should be there by 10:00am. At 9:49 a.m. Davis returned High's call and told him that she discussed the matter with Chris

---

[18] The court had additional hours that needed covering in the court, but instead of giving those hours to Mr. High, his hours were steadily and consistently reduced since May 2017. Ms. Bantz previously made comments where she stated, *"but … I've been thinking, if we are giving additional hours to someone else, why don't I explore getting them to you to satisfy your desire to participate in the retirement program."*  This never occurred, and Mr. High has not been allowed to participate in the retirement program.  It is likely that if the City had given the additional hours to Mr. High, then he could meet the eligibility criteria to enter the retirement plan program.

Holsted and Manson and they contacted Victor[19] from ARBH. High was told that he did not need to come in. Mr. High informed them that he was 10 minutes away and told them he would come in anyway.

51.     At 9:59 a.m Mr. High walked in and Davis was waiting for him at the door. She informed him that Chris Holsted and Manson "wanted to meet with you". Instead, Davis and Chris Holsted met with High in Chris's office. Mr. High informed them that he had car trouble, but he's here now and ready to start the docket. Chris said "well since we did not hear from you, we have already contacted Victor and he's on his way in." Mr. High corrected Chris and informed him of his communication efforts with Spears and Davis. Chris said, "well I disagree." Mr. High asked if Chris was going to make the people in the courtroom continue to wait. His response was, "no, we have already contacted Victor and he is on his way in." Mr. High expressed his dissatisfaction to Chris. He left Chris's office feeling uncomfortable and disappointed in the actions taken by the City. Afterwards, Mr. High visited with the bailiffs, then the judge. They all were surprised by the course of action taken by the Chris, Manson, and Davis on behalf of the City. Victor arrived at 10:15am.

52.     Mr. High sent his initial complaint on Lisa Davis to HR on February 7, 2018. This complaint was hand delivered and copies sent to the City Council and Mindy Manson, City Manager.

53.     On February 8, 2018, Manson emailed Mr. High requesting to set up a meeting, even though she is not the person who was supposed to handle the first level of the complaint[20].

---

[19] On information and belief, Victor is the same Victor M. Cristales as presented on the website of ARBH at http://www.abernathyroeder.com/victor-m-cristales/

Mr. High was perplexed as to why he would hear from Manson when his complaint was directed to the Human Resources department as required by City policy. Mr. High reminded Manson of this and suggested that she allow the complaint process to take its course. Manson responded:

> *"Don*
>
> *I am aware of your actions today and have reviewed the letter you left with my HR director. I regret your decision to decline to meet. We will continue our review of all the relevant information and determine what action is in the City's best interest.*
>
> *Regards,*
>
> *Mindy"*

54.     On February 25, 2018, Mr. High went to HR and spoke with Lety Yanez[21] to follow up on the status of his complaint. Yanez informed High that ***Manson had instructed her to hold off on his complaint* because he was an independent contractor and not a City employee**. Manson was incorrect on her view that Mr. High was an independent contractor. His first complaint made it clear that he was an employee as per the IRS 2007 investigation or examination of the City. Manson's rationale is pretext for discrimination against Mr. High. Manson's actions are retaliatory in nature.

55.     On February 26, 2018, Mr. High sent his second complaint to HR due to their failure to take any action on his February 7, 2018 complaint. Mr. High's second complaint

---

[20] On page 73 of the City of Wylie's employee handbook it states in pertinent part: "All complaints of discrimination or harassment will be promptly and thoroughly investigated, and violations of the policy will be treated as serious disciplinary infractions…***The claim should be presented to the Human Resources Manager***. This claim will be promptly reviewed, investigated and the complaining party will be advised of the disposition."

[21] Ms. Yanez is the Human Resources Director for the City of Wylie. Per the employee handbook, she is responsible for handling Mr. High's complaints.

provided additional supporting documentation to his status as a City employee. Manson

responded in email as follows:

> *"Don,*
>
> *We are in receipt of your correspondence on February 7th and February 26th regarding your complaints. Please know that we take all such complaints seriously and are committed to a thorough review and investigation. Per your request, this is to confirm that the investigation has begun. Our HR Director Lety Yanez will be reaching out to you shortly to set up time to meet with her[22].*
>
> *I do want to clarify a couple of points. In your letter February 26th, you reference p. 71 of the Employee handbook, specifically section B. under Grievance Procedure. Please note that section A under Grievance Procedure states that the procedure relates to employees who have any "complaint or grievance about demotion**, promotion** or **any form of disciplinary action**" and does not apply in this circumstance[23]. You reference to section 46 which addresses Discrimination/Harassment is correct in that this section governs the process to be followed to investigate your complaint as we understand it. As you note the complaint is submitted to HR, **with any subsequent appeal being made to the city manager[24]**. The City Council is not involved in this process and I request that you refrain from further communication with the Council while the investigation and/or any appeal is under way. Further, we are committed to respecting confidentiality of the process but cannot ensure that if you continue to include other employees in your correspondence.*
>
> *Regards,*
>
> *Mindy"*

---

[22] Mr. High met with Ms. Yanez on March 16, 2018 for an interview that lasted 1.5 hours or more.

[23] Manson's statement is inaccurate. Mr. High's complaint is based in part on the City's failure to promote him to a full-time city prosecutor or the in alternative, to increase his hours instead of disciplining him by decreasing his work hours. This makes Section A on page 71 of the employee handbook applicable. The City has failed to address Mr. High's complaints in the five (5) day time frame allowed for such matters. Mr. High has raised the question, many times, "who does he report to?" Mr. High's complaints are also based in part on discrimination and retaliation. Section 46 on page 73 of the employee handbook is applicable to that portion of his complaints. The failure to promote and reduction of hours are applicable under Section 46 as well. The reduction of hours changes the "terms and conditions" of Mr. High's employment with the City.

[24] Manson is the City Manager and stresses that any appeal related to Mr. High's complaint will go to her. This raises the point that Manson should not be communicating with Mr. High through any method. If she does, then she gives the appearance of bias and unquestionably tainted the investigative process. The investigation has already been unreasonably delayed compounded with Manson's acts of tainting the investigation.

---

56.     On February 28, 2018, Mr. High received an email that Abernathy's firm will handle the March 8th and 29th dockets.  The firm sent a younger Hispanic male to cover these dockets in place of Mr. High.  On information and belief, this male is under the age of 40.

57.     Mr. High's hours and income have decreased[25].  Mr. High has not been allowed to participate in the City's health insurance plan or retirement plan after 23 years of faithful service to the City of Wylie.

58.     On March 13, 2018, Mr. High sent his third complaint to HR, which was amended to specifically include Bantz and Manson.

59.     On March 27, 2018, the City Council held its regular meeting.  During this meeting the City Council voted to revoke Mr. High's current Resolution 2017-07(R).  On March 28, 2018, Manson sent Mr. High a letter confirming that the City Council passed a resolution that affected the terms of his 2017 resolution.  Manson stated, "… and did not terminate your employment.  You remain employed on an at-will basis until further notice and ***are expected to report to work <u>as requested by the court</u>***[27]."

60.     On March 28, 2018, Manson sent Mr. High another letter regarding the appointment or designation of an independent investigator to look into his claims.  Manson

---

[25] **See, Exhibit D** for a chart of the decline in Mr. High's hours.

[27] **See, Exhibit E** – A copy of Manson's March 28, 2018 letter to Mr. High.  This letter clearly and directly changed the terms and conditions of Mr. High employment with the City. It further changed his employment status similar to that of an 'on-call' status since he is to only report to work 'as requested by the court.'  Manson acted in concert with others including, but not limited to, the City Council to silence Mr. High, reduce Mr. High's work hours, prevent Mr. High from becoming eligible to participate in the City's health plan and retirement plan, and retaliated against Mr. High for engaging in protected activity when he opposed unlawful employment practices of the City and certain actors who represented the City in carrying out these acts.

further stated, "All employees may file a grievance in accordance with City policies. Please note that all grievance timelines will be strictly enforced.[28]"

61.    On April 2, 2018, Davis emailed Mr. High to inform that his *"services as a prosecutor are not needed for the April 12, 2018 docket."*

62.    On April 17, 2018, Davis emailed Mr. High that he was not needed for the May 10th docket.

63.    On information and belief, the City employs 201 through 500 employees.

**COUNT ONE**

**Discriminatory Failure to Hire and Change in Terms and Conditions of Employment Based on Age in Violation of The Age Discrimination In Employment Act 29 U.S.C. §§ 12201 et seq. Against the City of Wylie**

64.    High repeats and re-alleges paragraphs 1 through 63 hereof, as if fully set forth herein.

65.    On information and belief, the City has engaged the law firm of Abernathy, Roeder, Boyd and Hullett as their City Attorney with Richard Abernathy appointed as the Attorney from the firm to serve as City Attorney to the City. The City Attorney is on the City's

---

[28] Past history has shown that the City does not take complaints seriously and the City does not follow its own grievance policy and applicable timelines. One of the reasons this case for filed for litigation is the failure of the City to follow such protocols, as Mr. High's grievances/complaints has been pending since February 7, 2018, which was plenty of time for the City to address, further prevent and possibly cure some of the issues presented to this Court. It is clear that Mr. High cannot receive due process at the hands of the City. Manson's March 28th letter regarding the independent investigation is nothing more than a "hush letter." Mr. High cannot and will not be silenced on these important issues.

organizational chart[29] as a department of its own and operates as such by providing legal services to the City as a legal department would do.

66.     Pursuant to the City Charter, the City Attorney has the authority to appoint additional attorneys to act for him and the city in its representation and litigation, just as Mr. High has done for the past 23 years.

67.     During this time, the City and ARBH has allowed Mr. High to appoint other attorneys to cover court dockets for him in times where he needed to be absent.

68.     On information and belief, ARBH acted as a "Joint Employer" as it relates to the employment of Mr. High.  In the event that ARBH is not a joint employer under Title VII, then the City discriminated against Mr. High on the basis of age by virtue of selecting a younger and less experienced attorney to cover court dockets instead of Mr. High.  The City also allowed the younger and less experienced attorney to receive additional work hours instead of Mr. High.  The hours received by this attorney were hours that were taken away from Mr. High.

69.     The City's recent practice of allowing a younger, less experienced attorney from ARBH to cover court dockets in lieu of Mr. High is a policy or practice that had a disproportionately harmful effect on the protected class of age and race.  This practice is not job related for the City prosecutor position, nor is it consistent with business necessity of the City.

70.     High suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, attorney fees, and the costs of bringing this action.

---

[29] **See, Exhibit F** – FY 2015 Organizational Chart for the City of Wylie

## COUNT TWO

### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. §§ 2000e et al.)  Against the City of Wylie

71.     High repeats and re-alleges paragraphs 1 through 70 hereof, as if fully set forth herein.

72.     On information and belief, the City has engaged the law firm of Abernathy, Roeder, Boyd and Hullett as their City Attorney with Richard Abernathy appointed as the Attorney from the firm to serve of City Attorney to the City.  The City Attorney is on the City's organizational chart as a department of its own and operates as such by providing legal services to the City as a legal department would do.

73.     Pursuant to the City Charter, the City Attorney has the authority to appoint additional attorneys to act for him and the city in its representation and litigation, just as Mr. High has done for the past 23 years.

74.     During this time, the City and ARBH has allowed Mr. High to appoint other attorneys to cover court dockets for him in times where he needed to be absent.

75.     On information and belief, ARBH acted as a "Joint Employer" as it relates to the employment of Mr. High.  In the event that ARBH is not a joint employer under Title VII, then the City discriminated against Mr. High on the basis of race by virtue of selecting a younger, Hispanic, male who is a less experienced attorney to cover court dockets instead of Mr. High. The City also allowed Mr. Cristales to receive additional work hours instead of Mr. High.

76.     The City's recent practice of allowing a younger, less experienced attorney from ARBH to cover court dockets in lieu of Mr. High is a policy or practice that had a

disproportionately harmful effect on the protected class of age and race. This practice is not job related for the City prosecutor position, nor is it consistent with business necessity of the City.

77.     High suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, attorney fees, and the costs of bringing this action.

## COUNT THREE

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et al.) Against the City of Wylie

78.     High repeats and re-alleges paragraphs 1 through 77 hereof, as if fully set forth herein.

79.     In February 2018, High engaged in protected activity by initiating various complaints to the City's HR department in opposition to unlawful employment practices.

80.     The City was aware of High's complaints and protected activity as confirmed in writing by its City Manager, Mindy Manson. Ms. Yanez was also aware of Mr. High's protected activity. On information and belief, Linda Bantz and Lisa Davis were also aware of Mr. High's complaints.

81.     Manson received a copy of all complaints filed by Mr. High. The complaints contained specific details about Mr. High's concerns for the hostile work environment, reduction in his work hours, retaliation that he has experienced, and a specific listing of items that Mr. High wanted to see accomplished through the City's investigation of his complaints. Mr. High's complaints were specific enough to put the City on notice that he was opposing discriminatory or

unlawful conduct. At the time Mr. High initiated his complaints, he had a good faith and reasonable belief that the City's (and its agents) conduct was unlawful or discriminatory.

82.     Instead of investigating the complaints in accordance with City policy, Manson made several efforts to encourage or prevent High from pursuing his complaints.

83.     Only one month after High complained about Lisa Davis, Defendant summarily failed to promote High to a full-time prosecutor and thereby started reducing Mr. High's work hours while giving additional hours to another attorney from ARBH.

84.     Defendant's alleged reason for not selecting High for promotion to the position of full-time prosecutor and reducing his hours is pre-textual and baseless. High was well qualified for the position, more so than Victor Cristales who has been admitted to practice law in Texas since 2016. Whereas, High is a seasoned, board certified attorney who has practiced law for the past 30 years. Defendant did not promote High and reduced his hours because he had previously complained of age discrimination, hostile work environment/harassment and retaliation in his complaints to the Defendant. No negative reviews were ever provided to Mr. High regarding his employment during his tenure with the City.

85.     High suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, attorney fees, and the costs of bringing this action.

86.     Defendant intentionally violated High's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT FOUR

### Hostile Work Environment Against the City of Wylie

87.     High repeats and re-alleges paragraphs 1 through 86 hereof, as if fully set forth herein.

88.     Through its agents, the City changed the terms and conditions of Mr. High's employment when it reduced his hours, failed to consider him for additional hours as prosecutor, and instead gave those additional hours to a less experienced attorney. The City allowed Lisa Davis to continually cancel or reset court dockets thereby causing Mr. High to lose work hours and compensation[30].

89.     The City further made the work environment hostile by informing other employees not to communicate with Mr. High and if they do, then only to do so by email or a sticky note.

90.     As a result of these acts, the work environment was difficult, unpleasant and uncomfortable for Mr. High. Mr. High has been employed with the City for the past 23 years, but the City treated him differently when he opposed the unlawful change in the terms and conditions of his employment.

91.     A combination of the previously aforementioned claims constituted a hostile work environment claim against Mr. High's employer(s).

---

[30] Mr. High was paid an hourly rate of $130.00/hour as of his 2017 Resolution.

## COUNT FIVE

## First Amendment Retaliation and Section 1983 Claim Against Mindy Manson

92.     High repeats and re-alleges paragraphs 1 through 91 hereof, as if fully set forth herein.

93.     In Mr. High's initial complaint he requested eight (8) things for the City to take action on: "1)  An investigation be conducted into Lisa Davis, her inter-relations with other City of Wylie employees;  and 2) as a result of that investigation, a recommendation be made as to whether she should be censured, reprimanded, re-assigned or even terminated; 3) Further to see if there is evidence of a conspiracy between her and Linda Bantz and/or Mindy Manson with respect to their dealings with me, and my future with the City; 4) A clarification of the role of the City Attorney and his relationship with the City Prosecutor, and further; 5) Is the City Prosecutor an employee of the City? Or a subordinate of the City Attorney, who happens to not be an employee of the City? … ; 6) A policy developed and put in place so that there is no misunderstanding with respect to who can act as a substitute when the city prosecutor is unable to attend to court business; 7) A reinstatement of my hours, or has been necessary for many years now, consideration as a full-time employee, so that I may obtain benefits; and 8) A meeting scheduled among all the parties to discuss the results of the investigation and any further recommendations to be made."

94.     Mr. High suffered an adverse employment action when the City reduced his hours, failed to consider or promote him to a full-time prosecutor now that additional hours were available and when the City Council revoked Mr. High's resolution prior to its expiration.

95.     The speech in Mr. High's initial, second and third complaints involved matters of public concern, especially to the citizens of the City of Wylie who have a right to know what's happening in their Municipal court (i.e. docket cancellations, resetting of court dates, court inefficiency which can lead to additional and unnecessary costs to taxpayers). Admittedly, some of Mr. High's speech is related to his duties in public employment. Mr. High is asserting this claim based on the speech that is not in furtherance of his public duties. In other words, a good segment of Mr. High's complaint is as a citizen who is entitled to First Amendment protection.

96.     Mr. High's interest in speaking out about the matters of public concern outweighed the City's interest in promoting efficiency or maintaining confidentiality of an investigation.

97.     Manson was motivated to silence Mr. High due to his protected speech, part of which requested an investigation into whether a conspiracy existed between Manson, Davis and Bantz with respect to their dealings with Mr. High. Ms. Manson had already instructed Ms. Yanez not to conduct an investigation due to Mr. High's purported status as an independent contractor[31].

98.     Manson would not have taken these actions against Mr. High but for his exercise of free speech as a citizen.

99.     Manson is a public employee who acted in her official capacity as City Manager. Manson also exercised her responsibilities pursuant to state law. In fact, Manson abused the authority of her position when she attempted to silence Mr. High, instructed Ms. Yanez not to

---

[31] The IRS examination had resolved this question in 2007, 11 years ago. It is extremely disturbing that Manson arbitrarily instructed her subordinate not to conduct an investigation on a matter in which she is subject.

conduct an investigation into his complaints and when she influenced the City Council to revoke Mr. High's resolution prior to its original expiration date.

## COUNT SIX

### Federal Declaratory Judgment Action Against Abernathy, Roeder, Boyd and Hullett and Richard Abernathy
### 28 U.S.C §§ 2201 and 2202

100.    High repeats and re-alleges paragraphs 1 through 99 hereof, as if fully set forth herein.

101.    Mr. High files this Declaratory Judgment Action against Abernathy and his law firm of Abernathy, Roeder, Boyd and Hullett to declare and confirm three things:  A) Whether Mr. Abernathy or his law firm is the City Attorney for the City of Wylie; B) Whether Mr. High directly reports to the City Attorney or the City Council of Wylie; and C) Whether Abernathy, Roeder, Boyd and Hullett is a "joint employer" for purposes of Title VII.

102.    An actual controversy exists between the parties within the jurisdiction of this court.  Mr. High was hired by Abernathy and his law firm in April 1995[32] and continued serving in the role of Municipal Court Prosecutor for the City of Wylie some 23 years later.

103.    Mr. High served in a capacity where he provided legal services for the City, but presumably under the auspices of the City Attorney.  Per the City's Charter, "The City Attorney acts as legal advisor, and counselor for the City and all of its offices in matters relating to their official duties.  It is the City Attorney's function to advise the City Council, and the various

---

[32] **See, Exhibit A.**

departments of the City, as to the scope of the City's authority and to counsel the City of Wylie in legal issues."

104. The City Attorney is slated on the organizational chart for the City of Wylie[33]. However, the organizational chart does not state whether Abernathy or his law firm is the actual City Attorney. This scenario is unique in that the City Attorney is a part of a legal entity that is separate from the City. Yet, the City Attorney appears to maintain the ability to hire employees of the City and influence personnel matters involving the city involving the employee hired by the City Attorney. In this instance, that employee is Mr. High.

105. The City and ARBH have an interrelation of operations regarding the attorneys who can provide legal services to the City in the municipal court. Both control which attorney can appear in court to prosecute cases on behalf of the City.

106. The City and ARBH have the ability the make final decisions regarding employment matters of Mr. High whether it be directly or indirectly. When the City Council decided to revoke Mr. High's resolution, it was done behind closed doors during the executive session of the City Council meeting. On information and belief, Abernathy was present during the meeting and played a significant role in the City Council's decision to revoke Mr. High's resolution thereby affecting his employment status.

107. The City and ARBH has common management over the attorneys who can provide legal services to the City in the municipal court.

---

[33] **See, Exhibit F** – FY 2015 City of Wylie Organizational Chart.

108. Mr. High is entitled to know who all of his employers are. He has inquired numerous times as to whether he directly reports to the City Council or the City Attorney. If it's the City Attorney, then Mr. High needs know who is the "true" City Attorney.

109. In light of the previous claims asserted under Title VII, Mr. High is entitled to a declaratory judgment to ensure that he has named all possible employers that may have liability under Title VII.

## COUNT SEVEN
### Section 1983 Discrimination Claim Against Lisa Davis

110. High repeats and re-alleges paragraphs 1 through 109 hereof, as if fully set forth herein.

111. Davis repeatedly acted under the color of state law when she cancelled Mr. High's court dockets or hearings. Davis stated that she was acting with the consent of the Judge through his standing order which was promulgated through state law.

112. Davis repeatedly acted under the color of state law each time to reset Mr. High's court dockets or hearings in an effort to reduce his work hours and then provide those hours to an attorney from the ARBH firm. Davis again stated that she was acting with the consent of the Judge through his standing order which was promulgated through state law.

113. Davis committed these acts against Mr. High depriving him of his right as an employee of the City of Wylie to be free from discrimination and retaliation.

114.     Davis knew that Mr. High engaged in protected activity when he initiated and filed multiple complaints on her related to her actions and treatment towards him, as well as creating a tense, uncomfortable and hostile work environment for Mr. High.

115.     Davis further acted under the color of state law due to her status a public employee in performance of her official duties.  She presented information to the City Council, the policymaker for the City, which led to the City Council issuing Mr. High only a one year resolution.  Ms. Davis did this just one month after Mr. High complained that Davis inappropriately reprimanded him in front of another employee.

116.     Davis further acted under the color of state law with a discriminatory animus when she followed the direction of Linda Bantz to only communicate with Mr. High by email or sticky note, thereby further contributing to a hostile work environment.

117.     Davis is the Court Administrator for the Municipal Court in the City of Wylie. Davis facilitated this discriminatory scheme against Mr. High for so long, that it spread through to, and affected other employees in how they treated Mr. High.  Unfortunately, Davis' conduct became the municipal policy or custom for the Municipal Court of the City of Wylie.

## COUNT EIGHT
### Cat's Paw Liability

118.     High repeats and re-alleges paragraphs 1 through 117 hereof, as if fully set forth herein.

119.     On information and belief, Davis, Bantz, and Manson engaged in a conspiracy to facilitate the removal of Mr. High as prosecutor of the City.  The conspiracy started with the

incident with Davis in February 2017, which led to the "silent treatment" with Mr. High where communication in the court resorted to sticky notes and emails only.

120.     Bantz further confirmed that she instructed Davis, Johnson and other court staff to treat Mr. High in that regard.  As Manson's position of City Manager, it is presumed that she had knowledge of these incidents at the time they occurred.  The City Manager is higher on the organizational chart and Bantz directly reported to Manson and Davis directly reported to Bantz.

121.     Even if Manson was not aware of acts of Davis and Bantz early on in the process, she confirmed later in writing that she was aware of Mr. High's complaints and instructed him not to communicate with the City Council.  Yet, Manson influenced the City Council and likely the City Attorney to revoke Mr. High's resolution, which effectively ended his tenure as a prosecutor with the City because he's only to report to work *as requested by the Court."*  The Court could decide to not call Mr. High to work due to hours being given to Mr. Cristales and possibly other attorneys at ARBH.

122.     Through it all, Davis was in a position to influence Bantz about her dealings with Mr. High.  Bantz was in a position to influence Manson related to dealings with Mr. High. Manson thereby influenced the City Council who made the final decision to revoke Mr. High's resolution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for his past and future loss of wages, seniority and benefits, plus interest as a result of the violations;

C. Award Plaintiff front pay (including benefits);

D. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action. Such fees may be awarded under Title VII, the Back Pay Act, 42 USC § 1988--- or if under none of those----the Equal Access to Justice Act.;

E. Award to Plaintiff compensatory damages;

F. Award to Plaintiff punitive damages;

G. Equitable relief, such as a declaration that Defendant violated Title VII;

H.   An injunction prohibiting the Defendant from further violating the law against Plaintiff;

I.  An order requiring the Defendant to regularly report to the Court on future efforts to reduce the likelihood of others suffering such violations; and

J. Award Plaintiff a Declaratory Judgment;

K. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: <u>14 MAY 2018</u>

Arlington, Texas

Respectfully submitted,

By:     /s/ Lantis G. Roberts
        Lantis G. Roberts
        Texas Bar No. 24057463
        E-Mail: Lantis@kreativelaw.com
        **THE LAW OFFICE OF LANTIS G. ROBERTS, PLLC**
        1166 West Pioneer Parkway
        Arlington, TX 76013
        Tel. (817) 768-1819
        Fax. (817) 704-4529
        **Attorney for Don High**