# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DON HIGH | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-364 |
| | § | Judge Mazzant |
| CITY OF WYLIE, TEXAS et al. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Abernathy, Roeder, Boyd & Hullet ("ARBH") and Richard M. Abernathy's ("Abernathy") (collectively "the Abernathy Defendants") Motion to Dismiss First Amended Complaint (Dkt. #36), Abernathy, Roeder, Boyd & Hullet and Richard M. Abernathy's Motion to Stay Discovery (Dkt. #50), and Plaintiff's Motion to Strike the Abernathy Defendant's Reply to Plaintiff's Response to their Motion to Stay Discovery (Dkt. #53). Having considered the motions and the relevant pleadings, the Court finds that Defendants' Motion to Dismiss should be granted and the motion to stay and motion to strike should be denied as moot.

## BACKGROUND

This case arises out of Plaintiff Don High's employment as a prosecutor for the Municipal Court with Defendant the City of Wylie ("the City"). Through Plaintiff's tenure handling prosecution duties, Plaintiff alleges that either Abernathy or ARBH serve as the City Attorney for the City. Abernathy hired Plaintiff on April 10, 1995, to act as a prosecutor for the City in its Municipal Court on April 27, 1995 ("the Hire Letter"). (Dkt. #32, Exhibit 1 at p. 1). The Hire Letter did not specify the amount of time Plaintiff would work for the City but included an attachment with the pre-trial and trial dates for 1995 (Dkt. #32, Exhibit 1 at p. 2). Plaintiff remained working as a prosecutor for the City, while also working in private practice, for the next twenty-three years. ARBH provided Plaintiff's first paycheck, but the City provided every other

paycheck for the next twenty-three years. Since the Hire Letter and first paycheck, Plaintiff has admittedly had minimal communication with the Abernathy Defendants (Dkt. #32 ¶ 22). It is unclear whether the City Council took part in Plaintiff's hiring, was in any way aware of Plaintiff's hiring, or approved Plaintiff's hiring.

Sometime after the Hire Letter, it became clear that the City Council was involved in the hiring of prosecutors for the City. On April 10, 2007, the City Council passed its first resolution in relation to Plaintiff's employment, Resolution 2007-15(R), appointing Plaintiff as a prosecutor for the City's Municipal Court for a time frame of two years. For the next ten years, the City Council passed a new resolution every two years, extending Plaintiff's position for an additional two years. Based on the resolution, Plaintiff alleges that it is unclear who is Plaintiff's supervisor, but that Lisa Davis, the Court Administrator ("Davis"), acted as his supervisor alleging that "her conduct demonstrated that she was supervising [Plaintiff's] work conduct and performance." (Dkt. #32 ¶ 81).

Plaintiff claims that Davis began treating Plaintiff in a disparate manner in February 2017, that this conduct was brought to the attention of Linda Bantz, the City's Finance Director, and Mindy Manson, the City Manager, ("City Manager Manson") and they did nothing about it or encouraged the behavior. According to Plaintiff, Davis successfully reduced Plaintiff's hours and removed him from all jury trial dockets, even though it was made known that Plaintiff wanted to work more hours. Specifically, Plaintiff claims "Davis almost single handedly changed the terms and conditions of High's employment with the City." (Dkt. #32 ¶ 49). Further, on March 14, 2017, Davis proposed a resolution to the City Council which would only extend Plaintiff's position for one year, as opposed to two years as had been typical up until this point. The City Council voted the resolution, Resolution 2017-07(R), through and extended his position for only one year.

During this time, while Davis reduced Plaintiff's hours, the City had an attorney from ARBH handle additional hours of prosecution that was needed in the Municipal Court. Davis also had an ARBH attorney fill in for Plaintiff on a day he ran late to court due to car trouble. Davis continued to reduce Plaintiff's hours and remove him from dockets and place an ARBH attorney as a prosecutor in his place.

On September 1, 2017, Davis drafted a performance improvement plan ("PIP") (Dkt. #32 ¶ 85) with the help of Abernathy (Dkt. #32 ¶ 22). It was intended to be presented to him by Abernathy and City Manager Manson (Dkt. #32 ¶ 70). It allegedly indicated that Plaintiff was going to be closely monitored by the City Manager, the Human Resources Director, and the City Attorney. However, the PIP was never presented to Plaintiff and he never signed it.

Plaintiff filed three complaints with the City's human resources department regarding the alleged discrimination by the City's employees, with the last complaint being filed on March 13, 2018. City Manager Manson responded to the complaints, Abernathy did not.

On March 27, 2018, the City Council held its regular meeting. Abernathy was present at this meeting, although Abernathy is not a City Council member. At that meeting, the City Council voted to revoke Resolution 2017-07(R), but Plaintiff remained employed with the City on an at-will basis.

Based on this set of facts, Plaintiff sued the City, Davis, City Manager Manson, and ARBH for violations of Age Discrimination in Employment Act 29 U.S.C. §§ 12201 et seq. ("ADEA"), Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et seq.) ("Title VII") and creating a hostile work environment. Plaintiff also seeks a declaratory judgment as to the Abernathy Defendants.

On November 2, 2018, the Abernathy Defendants filed the present Motion to Dismiss asking the Court to dismiss the claims asserted against them (Dkt. #36). On November 30, 2018, Plaintiff filed a response (Dkt. #46). No reply was filed.

Further, on December 19, 2018, the Abernathy Defendants filed the present Motion to Stay asking the Court to stay discovery until the motion to dismiss was decided (Dkt. #50). On January 2, 2019, Plaintiff filed a response (Dkt. #51). On January 10, 2019, the Abernathy Defendants filed a reply (Dkt. #52). The next day, on January 11, 2019, Plaintiff filed the present Motion to Strike the reply that was filed in support of the Motion to Stay (Dkt. #53). The Abernathy Defendants filed a response to the Motion to Strike (Dkt. #54).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial

plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Plaintiff filed suit against ARBH for discriminatory failure to hire and change terms and conditions of employment based on age in violation of the ADEA, race discrimination in violation of Title VII, and creating a hostile work environment asserting that ARBH is a "joint employer" with the City (collectively "the discrimination claims"). Moreover, Plaintiff filed a declaratory

judgment action against ARBH and Abernathy. The Abernathy Defendants maintain that all claims against them should be dismissed for failure to state a plausible claim. The Court addresses both sets of claims in turn.

## I.     The Discrimination Claims

As to the discrimination claims, Plaintiff argues that he has stated a plausible claim against ARBH because ARBH is a "joint employer" of Plaintiff, with the City asserting that ARBH is integrated with the City. The Abernathy Defendants assert that ARBH is not a "joint employer" and that all actions taken by either Abernathy or ARBH were made in the course and scope of the role as City Attorney and therefore entitled to attorney immunity.

The Fifth Circuit has developed a test to determine when "separate business entities are sufficiently interrelated for any employee whose Title VII [or ADEA] rights have been violated to file a charge against both entities." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983); *accord Powell v. Dall. Morning News L.P.*, 776 F. Supp. 2d 240, 248–49 (N.D. Tex. 2011). The factors to determine the interrelation are:

> (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Courts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations. The criterion has been further refined to the point that "[t]he critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?"

*Trevino*, 701 F.2d at 404 (citations and quotations omitted).

Plaintiff acknowledges that Abernathy as an individual actor cannot be liable for a Title VII claim and so does not argue that Abernathy is Plaintiff's "joint employer." (Dkt. #46 at p. 10). Instead, Plaintiff maintains that ARBH is a "joint employer" because it meets all four factors here. However, it remains crucial to the determination of this question whether, based on the facts

6

presented, Abernathy or ARBH is the City Attorney for the City of Wylie. The City Charter of Wylie[1] states: "The city council, in consultation with the city manager, shall appoint a competent, duly qualified, licensed and practicing attorney in the State of Texas who shall serve as the city attorney." CITY OF WYLIE, TEX., ORDINANCE, PART 1-CHARTER, art. IV, § 4 (2019).[2] Moreover, "the city council may contract with an attorney or with a firm of attorneys who may designate one member of said firm to serve as city attorney." *Id.* Accordingly, whether the City Council contracted with either Abernathy, individually, or with ARBH, Abernathy is the City Attorney for the City.

Having made that determination, the Court turns to the four factors. First, Plaintiff alleges that the City "ha[s] an interrelation of operations regarding the attorneys who can provide legal services to the City in the municipal court. Both control which attorney can appear in court to prosecute cases." (Dkt. #32 ¶ 139). However, the City Charter states that it is in fact "[t]he city attorney, with the approval of the city council, [who] may select additional attorneys to act for him and the city in its representation and litigation." CITY OF WYLIE, TEX., ORDINANCE, PART 1-CHARTER, art. IV, § 4 (2019). Abernathy, in his role as City Attorney, is not also acting on behalf of ARBH. Thus, ARBH does not have an interrelation of operations with the City and does not control who provides legal services for the City or appears in court on behalf of the City.

Plaintiff alleges that the second, and most important factor, is met because ARBH makes final decisions regarding employment matters, evidenced by Abernathy's presence at the City Council meeting when the City Council voted to revoke his resolution. Plaintiff argues also that

---

[1] Plaintiff references the City of Wylie Charter in his complaint.
[2] The Court is quoting the current version; however, the language is identical or substantively similar in the previous versions that were in place during the time of the alleged discrimination. CITY OF WYLIE, TEX., ORDINANCE, PART 1-CHARTER, art. IV, § 4 (2016); CITY OF WYLIE, TEX., ORDINANCE, PART 1-CHARTER, art. IV, § 4 (2017).

Plaintiff "was hired by the Abernathy Defendants as an employee." (Dkt. #46 at p. 4). As to Plaintiff's hiring, on April 10, 1995, Abernathy did contact Plaintiff to inquire about Plaintiff handling prosecution duties for the City on April 26, 1995. As pleaded, Abernathy was the City Attorney in 1995. There is nothing in Abernathy's action in hiring Plaintiff to handle prosecuting duties for the City that would remove him from his role as City Attorney and invoke his title as partner at ARBH. Regarding the revocation of his resolution, as City Attorney, Abernathy is required to "serve as a legal advisor to the city council and city manager." CITY OF WYLIE, TEX., ORDINANCE, PART 1-CHARTER, art. IV, § 4 (2019). Abernathy again acted in his role as City Attorney as opposed to partner at ARBH, indicating that ARBH was not involved in the final decisions made regarding Plaintiff's employment.

As to the third factor, Plaintiff alleges that both "[t]he City and ARBH ha[ve] common management over the attorneys who can provide legal services to the City in the municipal court." (Dkt. #32 ¶ 141). Further, Plaintiff argues that both ARBH and employees of the City were involved in the creation of the PIP to discipline Plaintiff. Finally, Plaintiff maintains that the City and ARBH assigns municipal court coverage to Victor Cristales, who is an employee of ARBH. As previously noted, it is Abernathy, in his role as City Attorney, who has the authority to select attorneys to act as prosecutors for the City, with the approval of the City Council. CITY OF WYLIE, TEX., ORDINANCE, PART 1-CHARTER, art. IV, § 4 (2019). Again, this is not ARBH's decision. Further, in preparing the PIP with City Manager Manson and Davis, which the Court notes was never actually given to Plaintiff, the Court finds Abernathy would have assisted in this process in his role as City Attorney—an advisor to the city manager. *Id.*

Finally, Plaintiff argues that the City has a degree of financial control over ARBH because of the City's payments for services ARBH rendered to the City. Although not presented under this

factor, the Court notes that, what is now ARBH, paid Plaintiff's first paycheck of his twenty-three-year employment, with the rest were paid by the City. The Court acknowledges that it is at least plausible that there may be slight overlap between finances; however, the Court does not find it to be so great to create the required relationship between the City and ARBH to categorize ARBH as a "joint employer" of Plaintiff. Accordingly, plaintiff has not plausibly suggested that ARBH is in fact Plaintiff's "joint employer."[3]

Even if ARBH was a "joint employer", simply "establishing a 'joint employer' relationship does not create liability in the co-employer for actions taken by the other employer." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 229 (5th Cir. 2015) (citations omitted).[4] ARBH would be liable for Plaintiff's discrimination only if ARBH participated in the discrimination, or if it knew or should have known of the discrimination and failed to act. *See id.* Here, there are no factual allegations that ARBH participated in the alleged discrimination or knew or should have known about the alleged discrimination. All the factual allegations of discrimination arise out of conduct of the City's employees. In his recitation of the causes of action, Plaintiff claims that "ARBH was aware of Davis' conduct towards Mr. High but failed to take preventative or corrective actions." (Dkt. #32 ¶ 94). As this is a conclusory allegation, it is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. The facts in the complaint indeed suggest otherwise. In his first verbal complaint of Davis' behavior, Plaintiff talked to Linda Bantz, a city employee, in his second verbal complaint he talked to City Manager Manson, and when he submitted his

---

[3] The Abernathy Defendants additionally argue that they are entitled to attorney immunity. Generally, when acting within the scope of their representation, "attorneys are immune from civil liability to non-clients." *Cantey Hanger, LLP v. Byrd*, 467 S.W. 3d 477, 481 (Tex. 2015). The Court need not rule on the attorney immunity doctrine at this time but notes that it has found Abernathy acted in his role as City Attorney, in determining ARBH is not a "joint employer."

[4] The Court acknowledges that the Fifth Circuit applies the "hybrid economic realities/common law control test" in this case, which is different than the *Trevino* analysis. *See Powell*, 776 F. Supp. 2d at 248–49. However, the Court finds the same principle should apply under the *Trevino* analysis.

9

formal complaints to the City's HR department, City Manager Manson responded. There is no factual allegation that Plaintiff or the City apprised ARBH or even Abernathy of Davis' alleged conduct toward Plaintiff. Thus, regardless of whether ARBH is a joint employer, Plaintiff did not plausibly plead that ARBH is liable for the alleged discrimination that took place.

## II. The Declaratory Judgment Action

As to the declaratory judgment action, Plaintiff is seeking declaration and confirmation on the following three things: "(A) Whether [Abernathy] or his law firm is the City Attorney for the City of Wylie; (B) Whether [Plaintiff] directly reports to the City Attorney or the City Council of Wylie; and (C) Whether [ARBH] is a 'joint employer' for purposes of Title VII." (Dkt. #32 ¶ 135).

To determine whether to decide or dismiss the declaratory judgment suit, the Court must determine: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003). However, "[i]f a request for a declaratory judgment adds nothing to an existing lawsuit, it should not be permitted." *Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 3:07-cv-1799-B, 2008 WL 2434245, at *5 (N.D. Tex. June 17, 2008). As maintained by the Abernathy Defendants, courts "regularly dismiss declaratory judge actions which seek resolution of matters that will necessarily be decided in connection with the claims and defense already asserted in the lawsuit." *See, e.g., Hanson Aggregates, Inc. v. Roberts & Schaefer Co.*, 3:05-cv-1883-P, 2006 WL 2285575, at *3 (N.D. Tex. Aug. 9, 2006). Here, Plaintiff requests declaration and confirmation on issues that will naturally be a part of the case regardless of if the Court issues a decision on the declaratory

judgment. Thus, the Court declines to exercise its discretion over this declaratory judgment and finds it should be dismissed.

## CONCLUSION

It is therefore **ORDERED** that Abernathy, Roeder, Boyd & Hullet and Richard M. Abernathy's Motion to Dismiss First Amended Complaint (Dkt. #36) is hereby **GRANTED**, Abernathy, Roeder, Boyd & Hullet and Richard M. Abernathy's Motion to Stay Discovery (Dkt. #50) is hereby **DENIED as moot**, and Plaintiff's Motion to Strike the Abernathy Defendant's Reply to Plaintiff's Response to their Motion to Stay Discovery (Dkt. #53) is hereby **DENIED as moot**. As such, all claims asserted against Abernathy, Roeder, Boyd & Hullet and Richard M. Abernathy are hereby **DISMISSED WITH PREJUDICE**.

**SIGNED** this 5th day of August, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE