# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DON HIGH | § | |
| | § | |
| v. | § | Civil Action No.  4:18-CV-364 |
| | § | Judge Mazzant |
| CITY OF WYLIE, TEXAS, LISA DAVIS, | § | |
| and MINDY MANSON | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Don High's Motion for New Trial Under Federal Rule of Civil Procedure 59 and Brief in Support of Motion for New Trial (Dkt. #142); and Defendants City of Wylie, Texas (the "City"), Lisa Davis ("Davis"), and Mindy Manson's Motion to Supplement Judgment on Jury Verdict (Dkt. #140).  Having considered the motions and relevant pleadings, the Court finds that the parties' motions should be denied.

## BACKGROUND

On May 16, 2019, Plaintiff filed suit against Defendants, alleging violations of the Age Discrimination in Employment Act ("ADEA"), Title VII, 42 U.S.C. § 1983, and the First Amendment (Dkt. #1).  The Court conducted a trial on the merits beginning on January 21, 2020 (Dkt. #121).  The Court submitted the case to the jury for deliberations on January 29, 2020 (Dkt. #128).

The case proceeded to a verdict on four claims (Dkt. #135).  These claims were: race discrimination and retaliation under Title VII, age discrimination under the ADEA, and retaliation under the First Amendment (Dkt. #135).

On January 30, 2020, the jury returned a take-nothing verdict on all claims (Dkt. #129; Dkt. #135).  Specifically, the jury found that Plaintiff failed to prove that he was an employee of

the City, and Defendants were therefore not liable on any claims (Dkt. #135 at p. 1). The Court rendered judgment on the jury's verdict, which was entered on January 31, 2020 (Dkt. #138).

On February 18, 2020, Defendants filed their motion to supplement judgment on the jury verdict (Dkt. #140). Plaintiff did not file a response.

On February 28, 2020, Plaintiff filed his motion for new trial (Dkt. #142). Defendants filed their response on March 5, 2020 (Dkt. #143).

## LEGAL STANDARD

### I.     Rule 59(a)

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). However, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party— is grounds for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.

To be entitled to a new trial, Plaintiff must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence. *Taylor v. Seton Healthcare*, No. A-10-CV-650 AWA, 2012 WL 2396880, at *2 (W.D. Tex. June 22, 2012) (citing *Dresser–Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838–39 (5th Cir. 2004); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)). A jury verdict is entitled to great deference. *Dresser–Rand Co.*, 671 F.2d at 839. "Weighing the conflicting evidence and the

inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir. 1988).

## II. Rule 52(b)

Rule 52(b) provides that "the court may amend its findings—or make additional findings—and may amend the judgment accordingly." FED. R. CIV. P. 52(b). Rulings on Rule 52(b) motions "are committed to the sound discretion of the district court." *Luv n' Care, Ltd. v. Royal King Infants Prods. Co. Ltd.*, No. 2:10-CV-461-JRG, 2016 WL 55098, at *2 (E.D. Tex. Jan. 5, 2016) (citation omitted); *Interstate Fire & Cas. Co. v. Cath. Diocese of El Paso*, No. EP-12-CV-00221-DCG, 2014 WL 12479410, at *1 (W.D. Tex. Sept. 2, 2014) (citing 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 52.60[2] (3d ed. 2000); 9C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2582 (3d ed. 1998)).

The purpose of Rule 52(b) is "to correct manifest errors of law or, in some limited situations, to present newly discovered evidence." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (citation omitted). A motion under this rule should not "be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *Id.* (citations omitted).

## ANALYSIS

## I. Rule 59(a)

Plaintiff moves for a new trial under Rule 59(a), arguing (1) the verdict was against the great weight of the evidence; and (2) the Court erroneously asked the jury a question that was determined as a matter of law (Dkt. #142). Defendants oppose these arguments, asserting that the

verdict was not against the great weight of the evidence and that the Court did not err in sending the question to the jury (Dkt. #143). The Court agrees with Defendants and, further, finds that a new trial is unwarranted.

### A. Great Weight of the Evidence

In determining whether the verdict is against the great weight of the evidence, the Court must determine whether—"viewing the evidence in the light most favorable to the jury's verdict"—there is sufficient evidence in the record to support the verdict. *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992) (stating that the Court must view the evidence in the "light most favorable to the jury's verdict"); *Acco Brands, Inc. v. ABA Lock Mfr. Ltd.*, No. 2:02-CV-112, 2005 WL 1564973, at *1 (E.D. Tex. Mar. 30, 2005). Thus, if the Court finds that there is sufficient evidence to support the jury's verdict, the Court must uphold the jury's findings and deny the movant's request for a new trial. *See, e.g.*, *Dawson*, 978 F.2d at 208 (stating that "[w]here the jury could have reached a number of different conclusions, all of which would have sufficient support based on the evidence, the jury's findings will be upheld").

Plaintiff argues that a new trial should be granted because the jury's verdict is against the great weight of the evidence. Plaintiff challenges the jury's sole finding—that Plaintiff was not an employee of the City but, rather, an independent contractor. Defendants counter that while Plaintiff did show some evidence that supported his claims, there was sufficient evidence supporting the jury's finding that Plaintiff was an independent contractor.

The Court agrees with Defendants. Although Plaintiff offers conflicting evidence and the jury could have found for Plaintiff, the jury here had sufficient evidence to find for Defendants. Therefore, the Court upholds the jury's finding that Plaintiff was not an employee of the City.

Liability under Title VII and the ADEA hinges on whether an employment relationship exists. *See Deal v. State Farm Cty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118–19 (5th Cir. 1993). In determining whether there is an employment relationship under Title VII and the ADEA, courts apply a hybrid economic realities and common law control test. *Id.* (citations omitted). As the Fifth Circuit stated:

> The most important component of this test is "[t]he right to control [the] employee's conduct." "When examining the control component, we have focused on whether the alleged employer has the right" to hire, fire, supervise, and set the work schedule of the employee. . . . The economic realities component of the test focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment."

*Muhammad v. Dall. Cty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (footnotes omitted). With this in mind, the Court instructed the jury to consider six factors to determine whether an employment relationship existed: (1) who controls Plaintiff's work; (2) how Plaintiff is paid; (3) how much risk or opportunity Plaintiff has; (4) who provides Plaintiff's tools, equipment, and supplies; (5) how Plaintiff offers his services; and (6) the intent of Plaintiff and the City (Dkt. #133). The Court addresses each factor, concluding that there is sufficient evidence to support the jury's finding that Plaintiff was an independent contractor.

### 1. Who Controls Plaintiff's Work

As for the most important factor of control,[1] the Court instructed the jury:

> In an employer/employee relationship, the employer has the right to control the employee's work, to set the means and manner in which the work is done, and to set the hours of work. In contrast, an independent contractor generally must accomplish a certain work assignment within a desired time, but the details, means, and manner by which the contractor completes that assignment are determined by the independent contractor, normally using special skills necessary to perform that kind of work.

(Dkt. #133 at p. 8).

---

[1] *See* (Dkt. #133 at p. 9) (stating that "the extent of the right to control . . . is the most important factor").

5

There was evidence that supported a finding that Plaintiff controlled his own work. Specifically, there was evidence that Plaintiff; Linda Bantz, the head of the City's Finance Department; and Judge Maldonado, a judge in the Wylie Municipal Court, believed that Plaintiff had no supervisors. *See* (Dkt. #143, Exhibit 3). Similarly, Defendant Davis, the City's court administrator, testified that she never delivered a performance evaluation to Plaintiff because the City did not believe that she supervised Plaintiff's work. Evidence also showed that Plaintiff was upset that Davis would tell him how to do his job. *See* (Dkt. #143, Exhibit 3). Therefore, there was evidence that Plaintiff lacked a supervisor, and as a result, the details, means, and manner by which Plaintiff completed his work was determined by Plaintiff, not by the City.

Additionally, there was evidence that Plaintiff used specialized skills necessary to perform his work. Plaintiff obtained an undergraduate degree, a law degree, passed the bar exam, and became Board Certified in Criminal Law in order to serve as a municipal prosecutor. This evidence, along with his lack of supervisor, supports a finding that it was Plaintiff who controlled his own work. Such a finding weighs in favor of classifying Plaintiff as an independent contractor.

### 2.    How Plaintiff is Paid

The Court instructed the jury on the factor of payment:

> An employer usually pays an employee on a time-worked, piecework, or commission basis, and an employer usually provides vacation or sick time, insurance, retirement, and other fringe benefits to the employee. An independent contractor is ordinarily paid an agreed or set amount, or according to an agreed formula, for a given task or job, and no benefits are provided.

(Dkt. #133 at p. 8).

Here, there was evidence that Plaintiff was paid according to an agreed formula because Plaintiff was paid at a predetermined rate of $130 per hour (Dkt. #143, Exhibit 1). There was also some evidence that Plaintiff did not receive employment benefits. While Plaintiff was given a free

membership to the City's recreation center, he did not receive medical insurance or retirement benefits.  He also did not earn annual leave; rather, he was scheduled subject to his availability.  Thus, "consider[ing] all circumstances surround[ing] the work relationship," there was evidence supporting a finding that the payment factor weighed in favor of Plaintiff being classified as an independent contractor (Dkt. #133 at p. 9).

### 3. How Much Risk or Opportunity Plaintiff Has

Regarding Plaintiff's risk and opportunity, the Court instructed the jury that "[a]n independent contractor is generally one who has the opportunity to make a profit or faces a risk of taking a loss.  But an employee is generally compensated at a predetermined rate, has no risk of loss, and has social security taxes paid by the employer."  (Dkt. #133 at p. 8).

Evidence was presented that showed that Plaintiff had the opportunity to make a profit.  There was evidence that, had Plaintiff been an employee, the City would not have permitted him to engage in outside work while on City property.  Likewise, Plaintiff's testimony showed that he maintained his private practice—while he served as a municipal prosecutor for the City—and that he was unlimited in his ability to do so.  Accordingly, there was evidence that Plaintiff had the opportunity to make a profit as an independent contractor would, which weighs in favor of independent contractor status.

### 4. Who Provides Plaintiff's Tools, Equipment, and Supplies

Next, the Court instructed the jury on the provision of Plaintiff's equipment.  The Court stated, "An independent contractor usually provides the tools, equipment, and supplies necessary to do the job, but an employee usually does not."  (Dkt. #133 at p. 9).

Defendants concede that this factor weighs in Plaintiff's favor because it was the City who provided equipment necessary for Plaintiff to work, including his email address, office space, and

access to the court case files and computer files (Dkt. #133 at p. 6). While this single factor may support a finding that Plaintiff was an employee, the Court's analysis does not stop here. The jury was tasked with considering all of the factors,[2] and a finding that Plaintiff used the City's equipment is not alone determinative. *See Diggs v. Harris Hospital–Methodist, Inc.*, 847 F.2d 270, 273 (5th Cir. 1988) (holding that the plaintiff was not an employee even though she used the defendant's tools and equipment).

### 5. How Plaintiff Offers His Services

As for how Plaintiff offered his services, the Court instructed:

Independent contractors generally offer their services to the public or others in a particular industry, have procured the necessary licenses for performing their services, and may have a business name or listing in the phone book. Employees ordinarily work for only one or just a few employers, and do not have business names or listings.

(Dkt. #133 at p. 9).

Here, testimony established that the City allowed Plaintiff to maintain his private practice, so Plaintiff could offer his services to the public. Plaintiff also procured the necessary license to practice law as he earned his law degree and passed the bar exam. Therefore, there was evidence that Plaintiff offered his services as an independent contractor would, which weighs in favor of finding that he was an independent contractor.

### 6. Intent of Plaintiff and the City

Considering the parties' intent, the jury instructions provided that "[t]he parties' intent is always important. But the description the parties give to their relationship is not controlling. Substance governs over form." (Dkt. #133 at p. 9).

---

[2] *See* (Dkt. #133 at p. 9) (instructing the jury to "consider all the circumstances surrounding the work relationship" and that "no single factor determines the outcome").

There is evidence that neither the City nor Plaintiff intended for Plaintiff to be an employee. To start, there was evidence that the City intended Plaintiff to be an independent contractor because the City classified Plaintiff as an independent contractor for tax purposes when he was first hired. *See* (Dkt. #143, Exhibit 3). Evidence also showed that Plaintiff intended to be an independent contractor because he knew that he was initially hired as one in 1995 (Dkt. #143, Exhibit 3). This is affirmed by additional evidence that Plaintiff appealed the Internal Revenue Service's decision to change his employment tax status, asking the agency to change his status back to that of an independent contractor. *See* (Dkt. #143, Exhibit 2). Accordingly, there is evidence that establishes that the intent factor weighs in favor of finding that Plaintiff was an independent contractor.

### 7. Balancing of the Factors

Lastly, the Court instructed the jury to balance the factors, noting that "[w]hile no single factor determines the outcome, the extent of the right to control the means and manner of the worker's performance is the most important factor." (Dkt. #133 at p. 9). After analyzing the six factors set forth in the jury instructions, the Court finds that there is evidence supporting that five of the six factors—including the most important factor of control—weigh in favor of Plaintiff's classification as an independent contractor. While the jury could have found that Plaintiff was an employee based on Plaintiff's conflicting evidence, there was still sufficient evidence to support a finding that Plaintiff was an independent contractor. Accordingly, the verdict was not against the great weight of the evidence, and the Court denies Plaintiff's motion for new trial on this ground.

### B. Erroneous Jury Question

Plaintiff next asserts that the Court erred by asking the jury to determine whether Plaintiff was an employee (Dkt. #142). He claims that he was an employee of the City as a matter of law

9

(Dkt. #142). Defendants counter that Plaintiff waived this argument when he failed to object to the jury instruction on the determination of employment status (Dkt. #143). The Court agrees.

Under Federal Rule of Civil Procedure 51, a party may not later assert that there is an error in a given jury instruction if that party failed to properly object to it during trial. *See* FED. R. CIV. P. 51(d)(1); *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (affirming the district court's denial of a motion for new trial on an issue that was not raised until the motion for new trial).

Plaintiff did not object to the employment status question during trial; he instead brought this issue up for the first time in his motion for new trial. Indeed, the parties agreed to the instruction, which was taken from the Fifth Circuit's Pattern Jury Instructions. Plaintiff therefore waived any objection to the question of employment status, and the Court finds that the inclusion of the question on the verdict form does not warrant a new trial.[3]

## II.   Rule 52(b)

Lastly, in Defendants' motion to supplement the jury verdict, Defendants ask the Court to include an additional finding in the verdict that Plaintiff is an independent contractor (Dkt. #140). As stated above, the purpose of a motion under Rule 52(b) is "to correct manifest errors of law or, in some limited situations, to present newly discovered evidence." *Fontenot*, 791 F.2d at 1219 (citation omitted). Defendants have not alleged that the Court made manifest errors of law, nor do they seek to introduce new evidence. *See* (Dkt. #140). Defendants are therefore not entitled to relief under Rule 52(b).

---

[3] If a party does not object to a jury question as required by Rule 52(d)(1), the Court may still consider whether the instruction was plain error. FED. R. CIV. P. 51(d)(2). Because Plaintiff did not argue that the instruction was plain error, the Court will not consider the issue at this time. *See* (Dkt. #142).

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Don High's Motion for New Trial Under Federal Rule of Civil Procedure 59 and Brief in Support of Motion for New Trial (Dkt. #142) is hereby **DENIED**.

It is further **ORDERED** that Defendants City of Wylie, Texas, Lisa Davis, and Mindy Manson's Motion to Supplement Judgment on Jury Verdict (Dkt. #140) is hereby **DENIED**.

**SIGNED this 14th day of July, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE